# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LEONA PAYNE, <br> DARRELL PAYNE, <br><br> Plaintiffs, <br><br> v. <br><br> WS SERVICES, LLC, <br><br> Defendant. | Case No. CIV-15-1061 |

## ORDER

Plaintiffs Leona and Darrell Payne bring this motion to dismiss Defendant WS Services, LLC's ("WS") Amended Counterclaim. The issue before the Court is whether certain statements by Plaintiff Leona Payne constitute opinion and are therefore privileged and not actionable. Having considered the parties' submissions, the Court finds as follows.

**I.     Relevant Background[1]**

The Paynes sued WS alleging discriminatory hiring (as to Ms. Payne) and retaliatory termination (as to Mr. Payne). WS counterclaimed, contending that certain statements made by Ms. Payne were defamatory. These include:

- Comments on Ms. Payne's page on the social-networking cite, Facebook, that WS "is a 'bad company,' that the owners are greedy, and that the company delivers 'fake promises' while underpaying its employees to work in allegedly undesirable conditions." Doc. No. 30, at ¶ 2.

---

[1] The Court assumes for the purposes of this motion only, that the allegations in WS's Amended Counterclaims are true. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

- Comments on her social-media page on or around February 5, 2015 that WS does not hire women and "male womanizing people" run the company, despite Ms. Payne allegedly being aware that two women, including a shareholder and co-owner, have worked for WS for years. *Id.*, at ¶ 3.

- Picketing on main thoroughfares in Cushing, Oklahoma (where WS is located) wearing sandwich boards that state her husband, Plaintiff Darrell Payne, was "[f]ired after wife apply's [sic] for labor position," which WS asserts indicates to the public that Mr. Payne was terminated as a result of Ms. Payne's application to the company. *Id.*, at ¶ 4.

## II. Applicable Standard

As a general matter, because this action is before the Court on diversity grounds, state substantive law applies. *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1180 (10th Cir. 2007) (applying Colorado law). This, however, comes with a caveat. Because defamation draws upon federal constitutional concerns, the Court will look to federal law as well on such considerations. *Id.* at 1181 (federal court should follow state law "in pronouncing or construing [its] common law, statutory law, or [state] constitutional law," but "owes no deference to state-court interpretation of the United States Constitution."). In other words, the Court has no obligation to defer to an Oklahoma court if it disagrees with that court's view on federal constitutional issues; but will defer to Oklahoma courts to the extent their opinion is grounded in state law. *Id.* at 1181-82 (10th Cir. 2007). With these principles in mind, the Court turns to the parties' arguments.

## III. The Law of Defamation

Whether statements in a defamation action are actionable is a question of law properly decided by the Court. *Magnusson v. New York Times Co.*, 98 P.3d 1070, 1076

(Okla. 2004); *Metcalf v. KFOR-TV, Inc.*, 828 F. Supp. 1515, 1529 (W.D. Okla. 1992). Determining whether a statement constitutes fact or opinion is often a difficult question. The Oklahoma Supreme Court has recognized that, as a general rule, opinions are privileged and therefore not actionable:

> Statements about an individual which cannot be proven "true" or "false", because they are opinions or conclusions based on a review of the individual's actions are privileged. Furthermore, statements of pure opinion—based on stated facts or on facts known by the parties or assumed by them to exist—as a matter of constitutional law, enjoy absolute immunity protected both by the First Amendment and by art. 2, § 22 of the Oklahoma Constitution.

*Magnusson*, 98 P.3d at 1076; *see also Metcalf*, 828 F. Supp. at 1529 ("As a general rule, statements which are opinionative and not factual in nature, which cannot be verified as true or false, are not actionable as slander or libel under Oklahoma law").This rule, however, is not without exception. The Supreme Court has observed that a speaker may not immunize themselves from suit simply by couching a statement of fact in the form of an opinion:

> If a speaker says, "In my opinion John Jones is a liar," he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications; and the statement, "In my opinion Jones is a liar," can cause as much damage to reputation as the statement, "Jones is a liar." As Judge Friendly aptly stated: "[It] would be destructive of the law of libel if a writer could escape liability for accusations of [defamatory conduct] simply by using, explicitly or implicitly, the words 'I think.' " See *Cianci, supra,* at 64.

3

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990). Similarly, the undersigned has noted in a previous case that:

> . . . if an opinion is stated as or "is in the form of a factual imperative," or if an opinion is expressed without disclosing the underlying factual basis for the opinion, the opinion is actionable under Oklahoma law if the opinion implies or creates a reasonable inference that the opinion is justified by the existence of undisclosed defamatory and false facts . . . .

*Metcalf*, 828 F. Supp. at 1529 (citations omitted) (emphasis added); *see also Magnusson*, 98 P.3d at 1076 n. 20 (*citing id.*); *Bird Const. Co. v. Okla. City Hous. Auth.*, 110 P.3d 560, 564 (Okla. Civ. App. 2004) (quoting *Metcalf*); *McCullough v. Cities Serv. Co.*, 676 P.2d 833, 835 (Okla. 1984) (derogatory opinion which does not disclose the facts upon which it is based is a factual imperative that is "removed from the constitutionally protective mantle of" the United States and Oklahoma Constitutions); *see also* Restatement (Second) of Torts § 566 (Illustration Number 4).

When the statement in question involves an accusation of bigotry, the question becomes even more difficult. Generally, accusations of bigotry or bias amount to mere name calling. *See Forte v. Jones*, 2013 WL 1164929, at *6 (E.D. Cal. Mar. 20, 2013) ("it is important to stress that it is the allegation of membership in the Ku Klux Klan that is actionable; the allegation that a person is a "racist," on the other hand is not actionable because the term "racist" has no factually-verifiable meaning.") (citations omitted); *Martin v. Brock*, 2007 WL 2122184, at *3 (N.D. Ill. July 19, 2007) ("under Illinois law, statements of opinion that someone is racist" constitute name calling unless they imply the existence of undisclosed defamatory facts); *Raible v. Newsweek, Inc.*, 341 F. Supp.

4

804, 809 (W.D. Penn. 1972) (charging a person as a racist, *inter alia*, is the type of name calling that "does not always give rise to an action for libel").

However, when accusations of bigotry relate to specific or concrete acts, courts, including those extensively quoted in the Paynes' motion to dismiss, acknowledge that such statements may be actionable. For example, the D.C. Circuit Court of Appeals was "unwilling to say that the term [anti-Semitic] has no core meaning so that it is an expression of opinion in any context, and, as such, always constitutionally protected." *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1297 (D.C. Cir. 1988). The New Jersey Supreme Court has acknowledged that an accusation of bigotry may be actionable where it could fairly lead a reasonable reader to conclude that the person had "engaged in specific acts such as . . . **denying another employment or advancement because of [bias]** . . ." *Ward v. Zelikovsky,* 643 A.2d 972, 983-84 (N.J. 1994) (emphasis added). And an appeals court in Massachusetts found that accusations of anti-Semitism actionable where statements "plainly alleged" plaintiff had taken concrete action on the basis of one defendant's Jewish heritage. *Tech Plus, Inc. v. Ansel*, 793 N.E.2d 1256, 1266 (2003).

More recently, accusations of discriminatory termination have been found to be actionable in a defamation suit. *Overhill Farms, Inc. v. Lopez*, 119 Cal. Rptr. 3d 127, 138-141 (Cal. Ct. App. 2010). In *Overhill*, terminated employees lodged these accusations in press releases, leaflets, flyers, and other handbills accusing their former employer of racist firings which had a disparate impact on immigrant women. The California court of appeals acknowledged accusations of bigotry (such as racism and ageism) which lack precise allegations of discriminatory treatment constitute mere name-

5

calling and are thus non-actionable. *Id.* at 140. However, the court concluded the *Overhill* defendants went beyond mere name calling because their accusations of race and age-based termination were provably false. *Id.* at 140-41 ("And a claim of racially-motivated employment termination is a provably false fact. Indeed, that very fact is subject to proof in wrongful termination claims on a regular basis.")

As the foregoing authorities illustrate, whether a statement is actionable in a defamation action is a context-specific and often close question. Against this backdrop, the Court turns to the statements at issue.

### III. Analysis

#### A. The Statements in Paragraph 2 of the Amended Counterclaim Are Non-Actionable Opinion.

The statements in Paragraph 2 of the Amended Counterclaim come from Ms. Payne's social-media page. There, she states that WS "is a 'bad company,' that the owners are greedy, and that the company delivers 'fake promises' while underpaying its employees to work in allegedly undesirable conditions." Doc. No. 30, at ¶ 2. These statements are clearly opinions which would not be verifiable as true or false. *See Metcalf v. KFOR-TV, Inc.*, 828 F. Supp. 1515, 1530 (W.D. Okla. 1992) (statement that sham was perpetrated on public by greedy doctors was expression of opinion).

Opposing the Motion to Dismiss, WS makes a generalized argument that even if Ms. Payne's statements constitute an opinion, they should not be immune from suit because they were not made in good faith because Ms. Payne was targeting WS for a lawsuit. In support, WS cites Ms. Payne's charges before the EEOC and the instant

6

lawsuit. This argument appears to relate to Statement Nos. 2 and 3, which are discussed below, and therefore does not save Statement No. 1 from dismissal.

Accordingly, Plaintiffs' Motion to Dismiss is GRANTED as to the statements in Paragraph 2 of the Amended Counterclaim.

**B.   The Statements in Paragraph 3 of the Amended Counterclaim Are Actionable.**

The statements in Paragraph 3 also come from Ms. Payne's Facebook page and present a closer question. Ms. Payne posted on her Facebook page that "they don't hire woman [sic]" and that "male-womanizing people" run the company. Doc. Nos. 30, at 9 ¶ 3; 30-2. Accusations of being a womanizer are akin to calling someone a racist or bigot, the Paynes argue, and are therefore amount to inactionable name calling. Doc. Nos. 31 at 2-5; 33 at 2-4.

The undersigned disagrees. Examining Ms. Payne's statements in context – the Facebook posts in which they appeared[2] – the statements go beyond mere name calling. In her posts, Ms. Payne makes repeated statements that the company does not hire women. Doc. No. 30-2. As was the case in *Overhill*, a reasonable reader of these statements, in context, would understand them to mean that WS engages in discriminatory, gender-based hiring practices. Whether WS engages in discriminatory

---

[2] The full text of these posts is included as Appendix A to this opinion.

employment practices is verifiable, and in fact, one of the issues in the Paynes' complaint.³

Even if Ms. Payne's statements were construed as opinion, they are actionable because they create the reasonable inference that undisclosed defamatory facts (regarding WS's discriminatory hiring practices) exist. Ms. Payne argues that she did disclose the basis of her statements – that she was not hired based on her gender. Doc. No. 33, at 4. However, as noted above, this is a question that is disputed and at issue in this case. Thus, at this stage, the Court cannot say that her opinions are inactionable on this basis.

Finally, the Paynes argue that Ms. Payne's statements are opinion because she clearly made them in the midst of a personal disagreement with WS and her statements were in the category of statements that were "plainly 'pointed, exaggerated and heavily laden with emotional rhetoric and moral outrage.'" Doc. No. 33, at 4 (quoting *Magnusson*, 98 P.3d at 1076). In *Magnusson*, the phrases "botched surgeries" and "devastating scars" in a consumer investigation broadcast fit that category. *Magnusson*, 98 P.3d at 1076. The use of these judgmental terms by dissatisfied patients, the Oklahoma Supreme Court determined, put listeners of the broadcast on notice to expect speculation and personal judgment. *Id.* Therefore, the statements were not actionable. *Id.* Here, however, Ms. Payne does not use general judgmental terms to describe her dissatisfaction with the company; rather she levels specific accusations of gender-

---

³ In reply, the Paynes argue that Ms. Payne's statements were not claims that the company discriminates against women or that its hiring policies were unlawful. Doc. No. 33, at 4 n. 3. This argument is belied by the Paynes' own arguments that the "factual basis" for Ms. Payne's statements was that "she, a woman, was not being hired due to her gender." Doc. No. 33 at 4.

motivated hiring practices. Doc. No. 30-2. Further Ms. Payne asserted that her information was drawn on personal knowledge, information obtained through her husband, (an employee of the company) and surreptitiously recorded statements. *Id.* Ms. Payne's statements and assertions, taken together, do not put a reasonable reader on notice to take her statements as mere judgmental opinion.

Accordingly the motion to dismiss is DENIED with respect to these statements.[4]

### C. The Statements in Paragraph 4 of the Amended Counterclaim Are Actionable

Finally, WS alleges that Ms. Payne defamed it by marching up and down main thoroughfares in Cushing donning a sandwich board stating "Husband Fired after wife apply's [sic] for labor position." Doc. Nos. 30, at ¶ 4; 30-3. In its Amended Counterclaim, WS asserts that this sign was defamatory because it indicated to the public that Mr. Payne was fired as a result of his wife's application to WS. *Id.* The Paynes' argument in regards to this statement is not clear. In their Motion to Dismiss, the Paynes assert that the "sole factual statement" they could discern, presumably from WS's Amended Counterclaim, was that "the spouse was fired after complaining to the labor

---

[4] Though not discussed by either party, the Court notes that Ms. Payne made these statements extrajudicially, and judicial privilege therefore does not apply. *See Kirby v. O'Dens,* 628 F. App'x 602, 604 (10th Cir. 2015) ("Oklahoma has long recognized that attorneys, parties and witnesses are immune from *defamation and certain other suits* where those suits are based upon communications made *during or preliminary to judicial proceedings* as long as the communication is in some way relevant to the proceeding.") (quoting *State ex rel. Okla. Bar Ass'n v. Dobbs*, 94 P.3d 31, 45 (Okla. 2004)) (emphasis in original); *see also Rodriguez v. Nat'l Freight, Inc.*, 5 F. Supp. 3d 725, 729 (M.D. Penn. Mar. 13, 2014) (enjoining employee from sending extrajudicial communications denouncing employer's practices as discriminatory; participation in litigation "does not afford [employee] a license to disparage Defendants and/or damage their business relationships with impunity").

board." Doc. No. 31, at 5-6. This statement, they argue, is based on defamation by implication, and it therefore does not rise to the level of defamation and is not actionable. *Id.* at 6.

The trouble with the Paynes' argument is that the Court could not locate an allegation in the Amended Counterclaim that Ms. Payne made a statement that her spouse was terminated after complaining to the labor board. Nor do the Paynes provide a citation for this statement in their Motion to Dismiss.

In any event, the Court has considered this argument as it would relate to the statements in Paragraph 4 of the Amended Counterclaim. Having done so, it concludes the statement "Husband [f]ired after wife apply's [sic] for labor position," creates a reasonable inference that the statement was made because Mr. Payne was terminated as a result of his wife's application with WS. For the reasons stated above, this is unable to conclude at this juncture that it is inactionable.

Accordingly, Plaintiffs' Motion to Dismiss as to this statement is DENIED.

## IV. Conclusion

In accordance with the foregoing, Plaintiffs' Motion to Dismiss (Doc. No. 31) is GRANTED IN PART AND DENIED IN PART. Plaintiffs' Motion is GRANTED with respect to the statements in Paragraph 2 of Amended Counterclaim. Defendant's defamation claim as to that statement is DISMISSED WITH PREJUDICE. Plaintiffs' Motion is DENIED in all other respects.

IT IS SO ORDERED this 18th July, 2016.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

*Appendix A[5]*

*Another day, yeh!! We made it. For someone that doesn't have a job it sure has been pretty busy lately, calling, checking, and most of all just waiting..* **Darrell Payne** *told me yesterday that they are not going to hire me by the comments made. But they called me and told me they would check ref and job history on all apps and mine and then bring me in for interview. That was Tue. Well check with job and ref and no one has contacted anyone from my app. So this being said , what do my friends think? Is this crap or what. It's ok, they must believe in what they believe and I believe what I do have to do is the best route and it may not help me but it will help women in the future have the opportunity to take care of there family too. About last night Darrell , told ya it's called Karma. It's only gone to get worse for them not us.*

*Wish I could be a fly on the wall, maybe they do like in nursing, swoop in and collect all their info and then the truth will be prevailed. You guys, always keep saying that they have hired woman in the past. Must have been a past life. unfortunately for them I don't care about the past. The present is where im at. They will check ratios per male, female hire, they will listen to the recordings, which may not be used because the person making statement didn't know they were being recorded. But I can play on Facebook for my friends to hear. The way they talk it will not be good. I am once again stating I want a job not a fight, and I'm up for the challenge. Thanks to the ex employees, who's names I will only release if needed, the statements on your hire process will be appreciated. I am glad there is a few good men that believe I can do the job. Thank you. You didnt have to put all the extra but thanks again. They said they'd call y'all if they need anything. So now it starts. Maybe I'll get that job today.*

*. . .*

*Oh just came to me, I'm calling office today, since men there won't talk to me maybe the one they are OBVIOUSLY SCARED of will. Wasn't that the first comment made. "There is no way I could go to owner (female side) and say I hired Darrell Payne wife. Ha ha ha. "Yeh, pretty close, sure. Not meant to hit my ears but you see Darrell don't come home telling nothing but if I ask he don't lie. So just like me maybe she can explain why her company don't hire woman. no I heard how bad it way dealing with her but dang I can see why she would act like that now, she has male womanizing people in charge of her*

---

[5] This content is transcribed directly from Ms. Payne's posts, as represented in Doc. No. 30-2.

*company, our place ain't in the kitchen. Or laundry, or waitress, or kids. Or just the thing them men can't do. Why don't y'all try our work guys, come on.*

*. . .*

*Darrell Payne, woke up refreshed and thinking. Let me show you some trash talk Darrell. Every body better get their cookies in a row. I see the scars on you from your company.as an old nurse documentation is very important. Thank god I write down everything you tell me oh and that I have been telling. May friend said you probably will loose your job but I will never stop until an investigation into the whole matter is complete. And I don't mean you being pulled into the office and being fired either because they have concerns about your position on me working for their company. Glad you figured out the record on my phone. Told you they were laughing me out of the office. We make a great team baby. And I'm telling everyone this ain't going to be just about my rights when I am done. I have other work-related topics that Iwill  surface. I can promise it's not to be pretty All I want is a job. OK so they can take what I say and mark my words. I AM NOT YOU, YOU DIDN'T ASK ME FOR A JOB, I DID THIS ON MY OWN AND THE FACT OF THE MATTER IS THAT THEY DON'T HIRE WOMAN. THEY DON'T HAVE THE (WHAT IS IT IN MEXICAN-BALLS) TO SAY THAT T0 ME. BECAUSE I CAN START DISCRIMINATION ON THE GUYS. THEY DON'T too PUSH ME BY TELLING MY HUSBAND ANYTHING. HE DOESN'T DO OR WORK FOR ME. I DO got my big girl pantys on and ready for yall. No respect for lies Darrell, tell you one thing, thats why their karma is coming back and if the owner only heard half the shit said by them about him or should I say her. . Hum. Goes both ways baby. Show the owner guys, this message so I can explain what I'm talking about. People believe at least 50% of hear say, the only thing is I'm 100% right because my husband don't lie.*